UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTE McCOY,

      Plaintiff,

v.

NICHOLAS FOWLER, and
JARRAY ADAMS,

      Defendants.

Case No.  2:22-cv-12237
District Judge Susan K. DeClercq
Magistrate Judge Kimberly G. Altman

_____/

## REPORT AND RECOMMENDATION
## TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## (ECF No. 39)[1]

### I.      Introduction

This is a prisoner civil rights case.  Plaintiff Deonte McCoy (McCoy),

proceeding *pro se*, is incarcerated at the St. Louis Correctional Facility in St.

Louis, Michigan.  McCoy is suing defendants Corrections Officer Nicholas Fowler

(Fowler) and Sergeant Jarray Adams (Adams) claiming Fowler assaulted him in

retaliation for exercising his First Amendment rights and that Adams mishandled

an investigation into the matter.  (ECF No. 20, Amended Complaint).  Under 28

---

[1] Upon review of the parties' papers, the undersigned deems these matters
appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D.
Mich. LR 7.1(f)(1).

U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 48).

Before the Court is defendants' motion for summary judgment.  (ECF No. 39).  McCoy has filed a response, (ECF No. 47), and the motion is now ready for consideration.  For the reasons that follow, it is RECOMMENED that defendants' motion for summary judgment be GRANTED.  If adopted, this would fully dispose of the case.

## II.    Statement of Facts

The material facts as gleaned from the parties' papers, including defendants' declarations and McCoy's deposition testimony, follow.

At the time of the incident, McCoy was confined at the St. Louis Correctional Facility (SLF) where he was in Unit 2 with a Level IV security level. (ECF No. 39-2, PageID.217, Fowler Declaration; ECF No. 39-4, PageID.249, McCoy Deposition).  The Unit 2 cells are secured with mechanical, sliding steel doors that lock upon closing.  (ECF No. 39-2, PageID.217).  The Level IV inmates are housed with two people to a cell and are only allowed out of their cells at scheduled times during the day.  (ECF No. 39-4, PageID.249-50).  Each cell door has its own button in the control center, commonly referred to as "the bubble", that an officer will press to open the cell door, allowing inmates to exit their cell.  (ECF No. 39-2, PageID.217).  The inmates are notified via an announcement over the PA

2

system when the officers are about to open the doors for recreation time.  (ECF No. 39-4, PageID.251).

The incident occurred on June 21, 2021, around 7:30pm.  (ECF No. 39-4, PageID.24).  Fowler was working in the control center of Unit 2.  (ECF No. 39-2, PageID.217.)  McCoy and his cell mate were aware that they were about to go to recreation time due to Fowler making an announcement over the PA system.  (ECF No. 39-4, PageID.252-53).  According to McCoy, the door broke open, but only a couple of inches, so he could only get his fingertips through.  (*Id*. at PageID.256).  McCoy said that he then pulled the door open enough for him to be able to walk through the doorway with his body slightly turned sideways.  (*Id*. at PageID.257-260).  According to McCoy, as soon as he got halfway through the doorway, the door was "slammed" on him.  (*Id*. at PageID.260).  As the door was closing with McCoy still in the doorway, the door hit his face and chest and caused him to hit the back of his head on the door jamb where the door latches into the wall.  (*Id*., PageID.270).  McCoy said that he began to push on the door to force it back, and that he was stuck in the doorway for 15-20 seconds before he managed to squeeze through.  (*Id*. at PageID.268-269).

According to McCoy's deposition testimony, it took around 10 seconds for the door to break open, for him to push the door open enough for him to walk through, and for the door to then close on him.  (*Id*. at PageID.262).  However,

Fowler says in his declaration that he individually pushed all 24 buttons to open the cells for recreation time, and then pushed each individual button to close them. (ECF No. 39-2, PageID.217).  According to Fowler, he opened and closed the doors in the same sequential order, so the first door he opened was also the first door he closed, leading to each cell door being open for about 25-30 seconds.  (*Id.* at PageID.218).

McCoy alleges that Fowler violated his Eighth Amendment rights by using excessive force when intentionally closing the cell door on him.  (ECF No. 20, PageID.76).  According to McCoy, there was no one else in the hallway during the time the door was closing on him, so he thinks that Fowler had a clear view of him from the bubble.  (ECF No. 39-2, PageID.276).  But Fowler says that because McCoy's cell was halfway down the hallway, he couldn't actually see McCoy when he left his cell, as there were other people leaving their cells and blocking his view.  (ECF No. 39-2, PageID.218).

After leaving his cell, McCoy went to the bubble to inform Fowler that he was hurt and according to McCoy's deposition, Fowler responded saying "[o]h, I guess you want to be a little ass baby and shit, want to cry about the rules."  (ECF No. 39-4, PageID.276).  McCoy said he then went to the phone to tell his family about the incident, but before he could speak with anyone, Fowler called him back over.  (*Id.* at PageID.279).  McCoy said that Fowler continued to call him stupid

4

along with "all type[s] of weird stuff." (*Id*).  According to Fowler, McCoy came up to the bubble after being closed in the door and "angrily accused [Fowler] of shutting his cell door on him." (ECF No. 39-2, PageID.218).  Additionally, Fowler stated that McCoy said "[y]eah, I need medical attention, your bitch ass closed my head in the door.  I'm calling my lawyer on your bitch ass," and Fowler issued a misconduct ticket to McCoy for insolence. *Id*.  Fowler then wrote McCoy a pass to go to medical.  (ECF No. 39-4, PageID.280; ECF No. 39-2, PageID.219).

According to his deposition testimony, McCoy's sole alleged injury is headaches.  (ECF No. 39-4, PageID.304).  Following the incident, McCoy went to medical with complaints of head pain, and repeatedly stating that he had previous facial injuries.  (ECF. NO. 39-5, PageID.417, MDOC Medical Records).  During this visit, McCoy was noted to be alert and oriented, and had no sign of pain with palpation of his face and posterior head.  (ECF. NO. 39-5, PageID.420).  A nurse from healthcare later called Fowler and told him that McCoy did not suffer any serious injuries and would not require any special accommodations when he returned to the unit.  (ECF No. 39-2, PageID.219).

On June 22, 2021, McCoy filed a grievance against Fowler, which Adams investigated and responded to.  (ECF No. 39-3, PageID.233).  Adams stated that he reviewed the video of the incident and saw McCoy getting stuck in the cell door, but did not find any evidence that Fowler purposefully shut the door on McCoy,

thus finding the grievance unsubstantiated.  (*Id*., PageID.234).  McCoy claims that Adams violated his Eighth Amendment rights by failing to respond to the conduct discussed in the grievance regarding Fowler closing the door on him.  (ECF. No 20, PageID.76).

As to Fowler, McCoy claims that he violated McCoy's Eighth Amendment rights when closing the door on him on June 21, 2021.  (*Id.*, PageID.76).  He also claims that Fowler violated his First Amendment rights by closing the door on him in retaliation for having helped others with their grievances and legal work.  (*Id*.). McCoy submitted a declaration of Javon Oliver (Oliver), a prisoner at SLF since December of 2023, stating that on February 8, 2024, Oliver heard Fowler tell McCoy that "he can't wait to catch [him] again so that he could get his rat ass guts & get away with it over & over again because I've heard it's been done before in 2 block/unit 2."  (ECF No. 41, PageID.461).  Additionally, McCoy submitted a declaration of Aaron Anthony Ross (Ross), a prisoner at SLF since 2020, stating that on February 8, 2024, Ross heard Fowler say to McCoy "that he can't wait to catch [McCoy] again so that he could squeeze [McCoy's] rat ass guts out . . . I'll get away with it again, like he did in unit 2, so he could finish the job."  (*Id*., PageID.460).

### III.    Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

6

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that McCoy is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  Additionally, "once a case has progressed to the summary judgment stage,

7

as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

IV.    Discussion

A.    Eighth Amendment Claim Against Fowler

1.    Deliberate Indifference Standard

The Supreme Court has set forth two requirements to show a violation of the Eighth Amendment—one objective and one subjective. "First, the deprivation alleged must be, objectively, 'sufficiently serious,' . . . a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[.]' " *Farmer*, 511 U.S. at 834 (citations omitted). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quotation marks and citations omitted).

Second, "a prison official must have a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.

> The subjective component requires a showing that the official knew of and disregarded an excessive risk to inmate health or safety.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

8

> draw the inference.  An express intent to inflict unnecessary pain is not
> required.  Rather, obduracy and wantonness are required to make a
> showing of deliberate indifference.  An official's failure to alleviate a
> significant risk that he should have perceived but did not, while no
> cause for commendation, cannot under our cases be condemned as the
> infliction of punishment.

*Richmond*, 885 F.3d at 939 (cleaned up).  Deliberate indifference sits "somewhere

between the poles of negligence at one end and purpose or knowledge at the

other." *Farmer*, 511 U.S. at 836.  "It is, indeed, fair to say that acting or failing to

act with deliberate indifference to a substantial risk of serious harm to a prisoner is

the equivalent of recklessly disregarding that risk." *Id.*

## 2.    Application

### a.    Serious Medical Need

To meet the objective component, McCoy must show he suffered a

sufficiently serious amount of pain. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th

Cir. 2014).  Pain inflicted is sufficiently serious if it offends contemporary

standards of decency. *Id.*; *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

The question under the objective component is whether the conduct at issue is

severe enough to violate the constitution, and the constitution does not prohibit the

de minimis use of force against prisoners unless such use is "repugnant to the

conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).

McCoy suffers headaches due to the cell door closing on him while he was

exiting his cell on June 21, 2021.  (ECF No. 39-5, PageID.383).  Headaches alone

are not a sufficiently serious condition.  Previous cases have stated that "symptoms such as headaches, irritated and watery eyes, and breathing problems . . . [,] although clearly ones that have caused Plaintiffs discomfort and worry, do not rise to the level of seriousness as required to violate the Eighth Amendment." *Eldridge v. Williams*, No. 10-CV-423, 2013 WL 4005499, at *11 (S.D.N.Y. July 30, 2013). Additionally, in *Torres v. Aramark Food*, the plaintiff's allegation that he suffered "headaches as well as unnecessary aggravated stress[ ] and anguish," were not sufficient to satisfy the prong requiring the injury to be objectively serious.  No. 14-CV-7498 (KMK), 2015 WL 9077472, at *7 (S.D.N.Y. Dec. 16, 2015).

McCoy went to healthcare shortly after the incident occurred, and he reported having an "aching pain to his head at 10 out of 10." (ECF. No 39-5, PageID.418).  Healthcare staff noted that he was "alert and oriented," and he showed no sign of pain as his "expression remained unchanged with palpation of face and posterior head." (*Id*., PageID.419).  Thus, even on the day of the incident, McCoy's medical need was not objectively serious, as healthcare staff did not note him to be in any serious pain.  On June 25, 2021, McCoy returned to medical saying he is still having facial pain/headaches, but the pain decreased to a 4 out of 10.  (*Id*. at PageID.414).  Due to the pain level decreasing from a 10 on the day of the incident, to a 4 four days following the incident, there is no question of fact that the headaches McCoy suffered are not ones that would be considered as an

10

objectively serious medical need.  And as noted above, McCoy has said that his headaches are the only relevant injury resulting from being struck by his closing cell door.

McCoy's claims are also contradicted by the medical record from immediately after the incident, which indicates that McCoy had no injuries upon examination.  (ECF No. 39-5, PageID.419) (noting inmate ambulated from housing unit without difficulty; gait was steady and upright; alert and oriented x4; respirations even and unlabored; assessment of face, posterior head and neck unremarkable; no injuries or signs/symptoms of trauma noted with visual or physical examinations; full range of motion intact; facial movements are symmetrical; no signs/symptoms observed as inmate's expression remained unchanged with palpation of face and posterior of head.).  A registered nurse gave McCoy over-the-counter pain medication after the examination. (*Id.*, PageID.420-421).  Thus, a reasonable trier of fact would conclude that McCoy did not have a serious injury as required to satisfy the objective component for deliberate indifference.

b.    Sufficiently Culpable State of Mind

McCoy must also show that Fowler had a sufficiently culpable state of mind and that he applied force maliciously and sadistically for the purpose of causing harm.  *Hudson*, 503 U.S. at 6.

11

McCoy does not have any evidence that Fowler knew he was closing the cell door on McCoy.  During McCoy's deposition, he said that "in his conversation with [Fowler], [Fowler] told me if I continue to do this in his unit, that he was going to see to it that I – that he teach me a lesson basically if I continue to do this behavior of helping guys with doing legal stuff like that.  That's my proof, sir." (ECF No. 39-4, PageID.281).  Additionally, Oliver's and Ross' declarations do not offer proof of Fowler purposefully closing the door on him.  Rather, they suggest that Fowler may attempt to injure McCoy in the future, as both declarations state Fowler tell McCoy that he "can't wait to catch him again." (ECF No. 41, PageID.460-61).  Further, McCoy's deposition testimony reflects that McCoy was not able to see Fowler while in the doorway but claims that Fowler could see him from the bubble.  (ECF No. 39-4, PageID.282).  However, there is no proof beyond speculation that Fowler could see McCoy from the bubble.  Rather, Fowler's declaration states that he was unable to see McCoy in the doorway due to the many people that were exiting their cell and walking in the hallway at that time.  (ECF No. 39-2, PageID.218).  With that, the evidence is not sufficient to show that Fowler knew that McCoy was in the doorway, thus the inference of there being a substantial risk to McCoy could not have been drawn.  Therefore, McCoy has failed to satisfy either the objective or subjective component sufficient to survive summary judgment on his Eighth Amendment claim against Fowler.

B.      First Amendment Claim Against Fowler

1.      First Amendment Retaliation Standard

The plaintiff has the burden of establishing a First Amendment retaliation

claim.  The plaintiff must show that they were engaged in protected conduct; an

adverse action was taken against the plaintiff that would deter a person of ordinary

firmness from continuing to engage in that conduct; and there is a causal

connection between elements one and two.  *Thaddeus-X v. Blatter*, 175 F.3d 378,

394 (6th Cir. 1999).  If plaintiff meets his burden, then the burden shifts to the

defendant to show that he would have taken the same course of action had the

protected activity not occurred.  If this is shown, defendant is entitled to summary

judgment.  *Id*. at 399.

2.      Application

a.      Protected Conduct

Defendants argue that McCoy's alleged conduct—assisting other prisoners

with grievances and legal claims—was not protected conduct under the First

Amendment.  It is well settled that "an inmate does not have an independent right

to help other prisoners with their legal claims."  *Thaddeus-X*, 175 F.3d at 395

(citing *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993)).  "Rather, a 'jailhouse

lawyer's' right to assist another prisoner is wholly derivative of that prisoner's

right of access to the courts; prison officials may prohibit or limit jailhouse

13

lawyering unless doing so interferes with an inmate's ability to present his grievances to a court." *Id.* Thus, a "jailhouse lawyer" was engaged in protected conduct only if his assistance was necessary to vindicate another prisoner's right of access to the courts. *Id.* To demonstrate such a necessity, a jailhouse lawyer must show that (1) the "individual prisoner's right to access the courts has been impaired;" (2) the prisoner needed assistance; and (3) the prisoner "had no reasonable alternative but to seek that assistance from another prisoner." *Evans v. Vinson*, 427 F. App'x 437, 445-46 (6th Cir. 2011) (quoting *Thaddeus-X*, 175 F.3d at 396 n.11).

When questioned about the help he provided other prisoners, McCoy could not name specifics but said that he had tried to help other prisoners that are not "legally inclined" since he came to prison in 2005. (ECF No. 39-4, PageID.324-327). When pressed further, McCoy could not name specific prisoners he was helping prior to the cell door incident; he stated that it was about trying to "bring up the community" and that he helps by giving general legal advice on what forms to get, how to write the courts, and how to obtain information. (*Id.*).

This evidence does not suffice to substantiate McCoy's claim that he was engaged in protected conduct. *Cf. King v. Zamiara*, 150 F. App'x 485, 492–93 (6th Cir. 2005) (where the plaintiff provided three affidavits from prisoners to whom he provided legal assistance, substantiating the fellow prisoners' need for

assistance); *Thaddeus-X*, 175 F.3d at 395-96 (where co-plaintiff was a prisoner who had attested to needing the other plaintiff's assistance to adequately access the courts). Thus, McCoy fails to create a genuine issue of material fact that Fowler's alleged action was in retaliation for protected conduct.

b.    Causation

McCoy also fails to show the requisite causation between his conduct and the adverse action of Fowler closing the cell door on him. McCoy's theory that Fowler knew he wrote grievances on behalf of other prisoners is entirely speculative. At his deposition, McCoy was asked how he could prove that Fowler knew he was helping other prisoners. (ECF No. 39-4, PageID.327). He said that "the unit is not big and it's like a lot of people kind of like—I write grievances around here at this compound, this facility." (*Id.*). He explained that if an officer did something wrong, he would let the prisoner know or would "write the grievance" and "tell the counselor" so that the issue could be addressed. (*Id.*). "So with that situation, he know[s] that I help guys around there. You know, that's what I do." (*Id.*).

This amounts to no more than an assumption that Fowler would have known that McCoy often assists other prisoners with grievances and legal issues. On the other hand, Fowler's declaration reflects that he in fact did not know that McCoy was helping others with grievances and legal work. Thus, it is not plausible that

15

this act was the but for cause of the door closing on McCoy.  (ECF No. 39-2, PageID.219).  Further, as discussed above, there is not sufficient evidence to create a genuine issue of material fact that Fowler knew he was closing the door on McCoy.  Therefore, McCoy cannot satisfy the causal connection between his conduct and the adverse action he suffered.  Fowler should be granted summary judgment on this claim.

C.     Eighth Amendment Claim Against Adams

McCoy claims that Adams violated his due process rights by being "grossly negligent in his review and response [to McCoy's grievance] as respondent superior to Fowler, perceiving this conduct on camera yet taking no disciplinary action against Fowler or preventative action intended to potentially prevent any further or future misconduct of Fowler."  (ECF No. 20, PageID.75).  However, "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983."  *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  Thus, McCoy cannot create a question of fact that Adams violated any constitutional right when Adams's only role in the incident was to deny McCoy's grievance against Fowler.  *See* ECF No. 39-3, PageID.234 (Adams's declaration that his only personal involvement in the incident was as the grievance Step I respondent and that Adams found "no evidence that CO Fowler deliberately shut

16

the door on McCoy.").  Thus, summary judgment should be granted to Adams on McCoy's claim against him.

### D.    Qualified Immunity

#### 1.    Standard

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Created to protect government officials from interference with their official duties, qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It gives officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (punctuation modified).  After a defending official initially raises qualified immunity, the plaintiff bears the burden of showing that the official is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d at 472.

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, [it] determine[s] whether the allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the right was clearly established at the time of the incident." *Id.*  The steps may be

considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

2.    Application

Defendants argue that they are entitled to qualified immunity because McCoy cannot show a violation of his constitutional rights. As explained above, McCoy has failed to create a genuine issue of material fact as to whether his constitutional rights were violated.  In other words, no reasonable juror could find a constitutional violation on the record before the Court.  Therefore, defendants are entitled to qualified immunity, as "no constitutional violation has occurred[.]" *Kinlin*, 749 F.3d at 577.

V.    Conclusion

For the reasons stated above, it is RECOMMENDED that defendants' motion for summary judgment, (ECF No. 39), be GRANTED.  If adopted, this would fully dispose of the case.

Dated: August 15, 2024                                    s/Kimberly G. Altman
Detroit, Michigan                                         KIMBERLY G. ALTMAN
                                                          United States Magistrate Judge

**<u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as

18

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.

19

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 15, 2024.


                                        s/Carolyn M. Ciesla
                                        CAROLYN M. CIESLA
                                        Case Manager